```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/20/17
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHARISMA WORLD WIDE CORP., S.A.,

                Plaintiff,

- against -

AVON PRODUCTS INC.,

                Defendant.

**MEMORANDUM
OPINION & ORDER**

16 Civ. 2739 (PGG)

---

PAUL G. GARDEPHE, U.S.D.J.:

      Plaintiff Charisma World Wide Corp, S.A. ("Charisma") brings this suit for trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a), against Avon Products Inc.[1] Charisma alleges that Avon directed its Panamanian subsidiary to infringe Charisma's trademark in Panama and, in furtherance of the infringement scheme, brought a sham legal proceeding against Charisma in Panama attacking Charisma's Panamanian trademark. (Cmplt. (Dkt. No. 1) ¶¶ 23, 25) Avon has moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Charisma has not alleged a substantial effect on domestic commerce sufficient to support the

---

[1] "'[S]ection 44 of the Lanham Act[, codified at 15 U.S.C. § 1126,] gives foreign nationals the same rights and protections provided to United States citizens by the Lanham Act,'" if their countries are signatories to a qualifying convention or treaty, such as the Paris Convention for the Protection of Industrial Property, Mar. 20, 1883, as revised at Stockholm, July 14, 1967, 21 U.S.T. 1583, 828 U.N.T.S. 305 ("Paris Convention"). Empresa Cubana del Tabaco v. Culbro Corp., 399 F.3d 462, 484 (2d Cir. 2005) (quoting Int'l Café, S.A.L. v. Hard Rock Café Int'l (U.S.A.), Inc., 252 F.3d 1274, 1277-78 (11th Cir. 2001). Charisma is a domiciliary of Panama, which is a signatory to the Paris Convention, and thus is entitled to sue under the Lanham Act. (Cmplt. (Dkt. No. 1) ¶¶ 8-9)

extraterritorial application of the Lanham Act. (Def. Br. (Dkt. No. 18) at 4)[2] For the reasons stated below, Avon's motion will be denied.

## BACKGROUND

Charisma is a Panamanian company that sells a wide variety of women's cosmetics and personal care products, including hand and body lotions, deodorants, and perfumed body talc and powders, in Panama. Charisma's products are made almost entirely from materials obtained from the United States. (Cmplt. (Dkt. No. 1) ¶¶ 9, 16, 38) Charisma markets its products with a trademark – "Charisma y Diseño" – that it created and registered in Panama in 1990. (Id. ¶ 15) Charisma distributes its trademarked products through wholesale supermarkets, pharmacies, and department stores in Panama. (Id. ¶ 17) Charisma alleges that its trademarked products are "frequently consumed by individuals of Panamanian extraction residing, either temporarily or permanently, within the United States," and that its mark has "a reputation for quality amongst Panamanians throughout the world." (Id. ¶¶ 18-19) As a result of the commercial and financial success of its products, Charisma has entered into private label[3] contracts in other countries, including the United States. (Id. ¶ 20)

Avon is a New York corporation that specializes in beauty, household, and personal care products. (Id. ¶ 11) Avon uses a direct sale business model in which Avon sales representatives market its products door to door. (Id. ¶ 12) Avon created a Panamanian subsidiary in 1991, and has since opened multiple retail locations in Panama. (Id. ¶¶ 22, 30-31)

---

[2] The page numbers of documents referenced in this Memorandum Opinion & Order correspond to the page numbers designated by this District's Electronic Case Filing system.

[3] The Complaint describes a private label contract as "a special business arrangement pursuant to which a manufacturer or producer's product is sold under the name of a retailer or wholesaler." (Cmplt. (Dkt. No. 1) at 5 n.2 (citing Cadbury Beverages, Inc. v. Cott Corp., 73 F.3d 474, 476 (2d Cir. 1996)))

Charisma alleges that Avon directed its subsidiary to infringe Charisma's mark in Panama by selling competing products with the mark "Charisma" in Panama. (Id. ¶¶ 23, 34; id. Exs. C, D) Beginning in 2006, Charisma and Avon litigated Charisma's ownership of its mark in the Panamanian courts. On April 16, 2013, the First Judicial Circuit of Panama ruled in favor of Charisma. (Id. ¶ 29) Charisma alleges that Avon nonetheless continues to infringe Charisma's mark in Panama. (Id. ¶¶ 30-31)

Charisma alleges that Avon's ongoing infringement and legal challenge in Panama "negatively impact[ed] consumer confidence and goodwill," resulting in lost revenue to Charisma and, correspondingly, reduced purchases of materials from, and private label contracts with, U.S. companies. (Id. ¶¶ 28, 38-39) Charisma also alleges that Avon's "infringing retail efforts have caused United States-based consumers to purchase the Panamanian Avon Products," resulting in a financial benefit to Avon from its infringement. (Id. ¶¶ 30, 35-37)

## DISCUSSION

### I.   RULE 12(b)(6) STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and

3

does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. Cty. of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)).

## II. EXTRATERRITORIAL APPLICATION OF THE LANHAM ACT

Section 43(a) of the Lanham Act provides for a civil action for infringement of a trademark, including those not registered in the United States, against

> [a]ny person who . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a)(1).

"The 'usual rule' is that a sale of trademark-infringing merchandise that occurs in [a foreign country] will be governed by [that country's] law, not United States law." Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd., 955 F. Supp. 220, 225 (S.D.N.Y. 1997), aff'd, 152 F.3d 948 (Fed. Cir. 1998). However, "[t]he Lanham Act may reach allegedly infringing conduct that occurs outside the United States when necessary to prevent harm to commerce in the United States." Atl. Richfield Co. v. Arco Globus Int'l Co., 150 F.3d 189, 192 (2d Cir. 1998) (citing Fun–Damental Too, Ltd. v. Gemmy Indus. Corp., 111 F.3d 993, 1006 (2d Cir. 1997)).

> [T]hree factors – the so-called "Vanity Fair factors" – are relevant to whether the Lanham Act is to be applied extraterritorially: (i) whether the defendant is a United States citizen; (ii) whether there exists a conflict between the defendant's trademark rights under foreign law and the plaintiff's trademark rights under domestic law; and (iii) whether the defendant's conduct has a substantial effect on United States commerce.

Id. (citing Totalplan Corp. of Am. v. Colborne, 14 F.3d 824, 830 (2d Cir. 1994) (citing Vanity Fair Mills v. T. Eaton Co., 234 F.2d 633, 642 (2d Cir. 1956) (citing Steele v. Bulova Watch Co., 344 U.S. 280 (1952)))).

"[T]he absence of . . . factors [i] or [iii] . . . 'might well be determinative and . . . the absence of both is certainly fatal' to applying the Lanham Act to a citizen's activities abroad." Aerogroup, 955 F. Supp. at 226 (quoting Vanity Fair, 234 F.2d at 643). Moreover, the Second Circuit "has 'never applied the Lanham Act to extraterritorial conduct absent a substantial effect on United States commerce.'" Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd., No. 12 CIV. 6010 JMF, 2013 WL 5746126, at *4 (S.D.N.Y. Oct. 23, 2013) (quoting Atl. Richfield Co., 150 F.3d at 192 n.4) (citing Gucci Am., Inc. v. Guess?, Inc., 790 F. Supp. 2d 136, 142–143 (S.D.N.Y. 2011)).

### III. WHETHER AVON'S ALLEGED CONDUCT HAS HAD A SUBSTANTIAL EFFECT ON U.S. COMMERCE

Here, the parties dispute only the third Vanity Fair factor – whether Avon's conduct has had a "substantial effect on United States commerce." (See Def. Br. (Dkt. No. 18) at 8; Pltf. Opp. (Dkt. No. 20) at 4, 10). Avon contends that Charisma has not made this showing, noting that the Complaint does not allege that (1) Avon sold Charisma-branded products in the U.S.; (2) Charisma owns trademark rights in the U.S.; or (3) Charisma products have been sold in the U.S. (Def. Br. (Dkt. No. 18) at 9) Charisma argues that Avon has engaged in a course of conduct in the United States that is essential to its foreign infringement, and that that

infringement has caused six substantial effects on commerce in the United States. (Pltf. Opp. (Dkt. No. 20) at 12)

### A. Avon's Alleged Orchestration and Management in the United States of Infringement-Related Activities in Panama

Arguing that "[t]he substantial effects factor is satisfied by showing that . . . a defendant's orchestration and perpetration of the infringing foreign scheme on American soil was essential to the infringing activity abroad," (Pltf. Opp. (Dkt. No. 20) at 10-11), Charisma cites the following alleged conduct by Avon in the United States:

(1) Avon USA began orchestrating and devising a scheme to infringe upon the Charisma Mark;

(2) Avon USA made the decision, on America soil, to avail itself of the Panamanian courts to initiate a sham legal proceeding to further its infringement scheme;

(3) Avon USA continued to unlawfully utilize the Infringing Mark on its Panamanian Avon Products while the Panamanian Litigation was in progress and even after losing the Panamanian Litigation (brought by, and controlled by Avon USA and not the Avon Subsidiary) . . . .

(Id. at 12; see also Cmplt. (Dkt. No. 1) ¶¶ 23-31)  Plaintiff's claims that Avon orchestrated, schemed about, and directed from the United States infringement-related activities in Panama are not sufficient to demonstrate a "substantial effect on United States commerce," however.

Steele v. Bulova Watch Co., 344 U.S. 280 (1952) – Plaintiff's primary authority on this point – is not to the contrary.  In Bulova, "a United States citizen residing in San Antonio, Texas, conducted a watch business in Mexico City where, without Bulova's authorization and with the purpose of deceiving the buying public, he stamped the name 'Bulova' on watches there assembled and sold." Bulova, 344 U.S. at 281.  Steele imported into Mexico from the United States certain parts used in the watches he assembled and sold in Mexico. Id. at 285.  The Supreme Court found that Steele's purchases of parts from the United States "were essential

steps in the course of business consummated abroad; acts in themselves legal lose that character when they become part of an unlawful scheme." Id. at 287.  In concluding that it was appropriate to apply the Lanham Act to Steele's infringing activities in Mexico, the Supreme Court also cited the harm to Bulova's reputation and goodwill in the United States being caused by the infringing watches Steele was assembling in Mexico, many of which subsequently entered commerce in the United States. See id. at 287 ("[S]purious 'Bulovas' filtered through the Mexican border into this country; [Steele's] competing goods could well reflect adversely on Bulova Watch Company's trade reputation in markets cultivated by advertising here as well as abroad.").  In sum, in Bulova, the extraterritorial application of the Lanham Act was premised both on defendant's "domestic purchases" and on harm to Bulova's business in the United States.  The case does not hold that the mere direction and orchestration in the United States of infringing activities taking place abroad is sufficient for the extraterritorial application of the Lanham Act.

This interpretation of Bulova is confirmed by the Second Circuit's decision in Atlantic Richfield:

> Bulova does not hold that a defendant's domestic activity, even if "essential" to infringing activity abroad, is alone sufficient to cause a substantial effect on United States commerce.  In Bulova, the infringing product, although manufactured and sold abroad, was coming into the United States for sale, resulting in consumer confusion and harm to the plaintiff's goodwill in the United States.

Atl. Richfield Co., 150 F.3d at 193 (citation omitted).

Numerous decisions in this District likewise confirm that the mere direction or authorization in the United States of infringing activity taking place abroad – even if "essential" to the infringing activity – is not sufficient to justify the extraterritorial application of the Lanham Act. See Hong Leong Fin., 2013 WL 5746126, at *4 (no substantial effect on U.S.

commerce where plaintiff's sole argument for the extraterritorial application of the Lanham Act was that defendant's "scheme was executed in large part from New York"); World Book, Inc. v. Int'l Bus. Machines Corp., 354 F. Supp. 2d 451, 454 (S.D.N.Y. 2005) (no substantial effect on U.S. commerce where "the only domestic activity plaintiff alleges to have occurred in connection with the unauthorized distribution is the mere authorization of that activity" (emphasis in original)); see also Gucci Am., 790 F. Supp. 2d at 144 ("A defendant's domestic activity, even if 'essential' to allegedly infringing activity abroad, is insufficient by itself to constitute a substantial effect on United States commerce." (citation omitted)); Procter & Gamble Co. v. Colgate-Palmolive Co., No. 96 Civ. 9123(RPP), 1998 WL 788802, at *68 & n.31 (S.D.N.Y. Nov. 9, 1998) ("Domestic activity involved in the preparation of defendants' advertisements, even if 'essential' to the allegedly infringing activity abroad, is not enough to satisfy this prong of the Vanity Fair test. . . . [T]here is no precedent for the view that domestic activities 'essential' to infringement abroad are enough to satisfy the 'substantial effect on U.S. commerce' test.'" (citation omitted)).

Plaintiff's allegations that Avon orchestrated and managed the alleged infringement-related activities in Panama, and "made the decision . . . to initiate a sham legal proceeding [in Panama] to further its infringement scheme," (Pltf. Opp. (Dkt. No. 20) at 12), are not sufficient to demonstrate a "substantial effect on United States commerce."

### B. Other Alleged Effects on U.S. Commerce

Charisma claims that Avon's alleged infringing conduct has affected U.S. commerce in six ways. (See Pltf. Opp. (Dkt. No. 20) at 12) These alleged effects fall into three categories: (1) domestic benefits realized by Avon as a result of the alleged infringement-related activities in Panama; (2) consumer confusion in the United States caused by Avon's infringing

activities in Panama; and (3) certain effects on domestic companies resulting from the harm Charisma has suffered in Panama as a result of Avon's alleged infringing activities.

### 1. **Alleged Benefits to Avon**

Charisma alleges that Avon has realized a variety of benefits from its infringing conduct in Panama and – given that Avon is a domestic company – the benefits Avon has obtained from its infringement constitute a substantial effect on domestic commerce. (Pltf. Opp. (Dkt. No. 20) at 12; see also Cmplt. (Dkt. No.1) ¶¶ 35-37) Avon argues that this Court may consider only whether Avon's alleged infringement activities in Panama have impaired Charisma's trademark rights in domestic commerce. (Def. Reply (Dkt. No. 21) at 6)

Courts that have considered the domestic effects on U.S. companies of infringement abroad have focused on harm to the victim and not gain to the infringer. For example, in Bulova, the Supreme Court analyzed the effects of Steele's infringement on Bulova's business in the United States, and not on the profit Steele – an American citizen and resident – had realized from his sale of Bulova watch knockoffs. See also Les Ballets Trockadero de Monte Carlo, Inc. v. Trevino, 945 F. Supp. 563, 565-67 (S.D.N.Y. 1996) (analyzing domestic harm to the plaintiff's mark, reputation, and business resulting from domestic competitor's infringement abroad in finding a substantial effect on U.S. commerce); Warnaco Inc. v. VF Corp., 844 F. Supp. 940, 950-51 (S.D.N.Y. 1994) (denying motion to dismiss domestic plaintiff's Lanham Act claim based on infringing conduct in Spain and Portugal; "[a]ccepting the factual allegations in the Complaint as true, the Defendants' infringing activities have diverted sales from Warnaco and have caused confusion among consumers, with adverse impacts on Warnaco's income, reputation, and licensees. These impacts adversely affect Warnaco's competitive position with VF, a large rival in the United States market. . . . These allegations indicate that the Defendants' alleged activities affect United States commerce.");

Philip Morris, Inc. v. MidWest Tobacco, Inc., Civ. A. No. 88-1292-A, 1988 WL 150693 at *3-4 (E.D. Va. Nov. 4, 1988) (extending application of Lanham Act abroad because sales of domestic defendant's products there were expected to diminish domestic plaintiff's export sales and diminish its revenues from sales and licensing).

Considering the benefits realized by a domestic defendant from its infringement abroad in determining whether plaintiff has shown a substantial effect on U.S. commerce would – to a great extent – have the practical effect of reducing Vanity Fair's three-factor test to a two-factor test. Presumably, most U.S. defendants committing infringement abroad would profit thereby. A ruling that such a profit could – in any case involving an allegation of infringing conduct overseas – provide the basis for the extraterritorial application of the Lanham Act would eviscerate the rule that "each nation grant and control the exercise of trademark rights within its own borders." Aerogroup, 955 F. Supp. at 226 (citing Vanity Fair, 234 F.2d at 639 ("[T]he rights and liabilities of United States citizens who compete with foreign nationals in their home countries are ordinarily to be determined by the appropriate foreign law." (citation omitted))). Such a result should be avoided.

Consistent with this logic, Charisma has cited no case in which a court in this Circuit has found a "substantial effect on United States commerce" based merely on the benefit a domestic company received from foreign infringement.[4]

---

[4] Indeed, in Int'l Cafe, S.A.L. v. Hard Rock Cafe Int'l (U.S.A.), Inc., 252 F.3d 1274 (11th Cir. 2001) – a case cited by Charisma (Pltf. Opp. (Dkt. No. 20) at 11) – the Eleventh Circuit explicitly rejects the argument Charisma makes here:

> The only substantial effect in the United States alleged by Plaintiff is financial gain by [the domestic defendant], like royalties and merchandise commission. But the financial gain from royalties that [defendant], the United States parent company,

10

The Court concludes that the alleged benefits to Avon from the alleged infringement in Panama do not constitute a substantial effect on domestic commerce.

### 2. Consumer Confusion

Charisma contends that Avon's infringement in Panama has likely confused Panamanians residing in the United States. (See Pltf. Opp. (Dkt. No. 20) at 12; see also Cmplt. (Dkt. No. 1) ¶ 44) In the Complaint, Charisma alleges that its trademarked products are "frequently consumed by individuals of Panamanian extraction residing, either temporarily or permanently, within the United States"; that "[t]he Charisma Mark earned a reputation for quality amongst Panamanians throughout the world"; and that Avon's "infringing retail efforts have caused United States-based consumers to purchase the Panamanian Avon Products." (Cmplt. (Dkt. No. 1) ¶¶ 18, 19, 30) Charisma also asserts that "customers throughout the world have come to believe that Charisma World Wide is the infringer, and that the Charisma Mark is an inferior imitation, and have refused to continue purchasing, distributing, or retailing the Charisma Products." (Id. ¶ 45) Avon argues that purchases made outside the United States do not constitute domestic commerce, and that Charisma's allegations about consumer confusion in the United States are too conclusory to be relied on. (Def. Br. (Dkt. No. 18) at 7-9)

While it is true that "[f]inancial harm to an American trademark owner whether from the loss of foreign sales or the damage to the trademark owner's reputation abroad is at the very least, relevant to determining whether foreign infringement has a substantial effect on U.S. commerce," Rodgers v. Wright, 544 F. Supp. 2d 302, 313 (S.D.N.Y. 2008) (citations omitted), see Bulova, 344 U.S. at 286 (noting that the "spurious 'Bulovas'" could well reflect adversely on

---

received from the subsidiary abroad is insufficient in this case to establish the "substantial effects" required by Bulova.

Int'l Café, 252 F.3d at 1278 (citing Vanity Fair, 234 F.2d at 638, 642).

Bulova Watch Company's trade reputation in markets cultivated by advertising here as well as abroad"), here the trademark owner is not a domestic company.

Although Charisma cites alleged confusion among Panamanians residing in the United States, Plaintiff has not pled that purchases reflecting consumer confusion were made in the United States. Moreover, Charisma has not responded to Avon's assertion that any such purchases took place in Panama. (See Avon Br. (Dkt. No. 18) at 9)

Charisma alleges only that it has a Panamanian trademark and that its products are distributed in Panama. (Cmplt. (Dkt. No. 1) ¶¶ 15, 17) Charisma has not alleged that it does business in the United States or that it has a registered trademark in the United States that has been, or could be, harmed by Avon's alleged infringement in Panama. Given these circumstances, the consumer confusion alleged by Charisma does not demonstrate a substantial effect on U.S. commerce.

### 3. Claim that Harm Plaintiff Suffered as a Result of Avon's Alleged Infringement in Panama Has Caused Plaintiff to Purchase Fewer Commodities from U.S. Companies, and to <u>Enter Into Fewer Private-Label Contracts with U.S. Entities</u>

Charisma contends that Avon's infringement-related activities in Panama have damaged Charisma's business such that Charisma has reduced its purchases of commodities from U.S. suppliers, and entered into fewer private label contracts with U.S. entities:

> 28. The loss of revenue resulting from the Avon Companies' infringement also diminished Charisma World Wide's ability to continue producing and licensing its private label products.
> . . . .
> 38. Because Charisma World Wide purchased from U.S. companies nearly all of the materials it used to manufacture and produce the Charisma products, certain U.S. companies – including American Containers, Inc., Prochem USA, and Bourbon Street Trading Co. – all lost lucrative contracts and further business opportunities with Charisma World Wide, as a result of Defendant's infringement.

> 39. As a result of the infringement, Charisma World Wide's private label contracts in the Caribbean, Latin America, and the United States were limited, jeopardized or lost. This included private label contracts in Puerto Rico, a United States Territory, valued at approximately four hundred thousand dollars ($400,000.00) a month.

(Cmplt. (Dkt. No. 1) ¶¶ 20, 27-28, 38-39) Avon argues that Plaintiff's allegations are too conclusory, that the negative effects cited by Plaintiff do not result from Avon's conduct, and that – in any event – the Lanham Act only address effects that are trademark-impairing in the United States. (Def. Reply (Dkt. No. 21) at 6, 8)

### a. Whether Plaintiff's Allegations Are Conclusory

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. For example, an allegation that simply repeats the phrasing of the applicable statute is clearly not sufficient. Id. (quoting Twombly, 550 U.S. at 551)

Here, Charisma's assertions of lost private label contracts are not supported by sufficient facts "to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). Plaintiff has not pled what private label contracts were "limited, jeopardized or lost" (Cmplt. (Dkt. No. 1) ¶ 39), nor has it explained in any fashion how Avon's alleged infringing activities in Panama caused Plaintiff to lose private label contracts with U.S. entities.

The outcome is different as to Plaintiff's allegations concerning U.S. companies that lost contracts as a result of the harm inflicted on Plaintiff as a result of Avon's alleged infringement-related activities in Panama. Plaintiff has pled that it "purchased from U.S. companies nearly all of the materials it used to manufacture and produce the Charisma products," and that as a result of the harm done to its business in Panama by Avon's infringement-related activities, Plaintiff stopped buying materials from these U.S. companies –

13

three of which are identified by name. (Id. ¶ 38) These allegations are sufficient to pass muster under Iqbal.

### b. Whether Defendant's Conduct Must Be Trademark-Impairing in the United States

Avon argues that Plaintiff's claim nonetheless fails, because the "substantial effect on United States commerce" must be trademark-impairing in the United States. (Def. Reply (Dkt. No. 21) at 6, 8)

As an initial matter, if the Vanity Fair court intended to limit extraterritorial application of the Lanham Act to cases in which a domestic defendant's conduct has impaired a trademark in the United States, the court could have said that. Instead, the third Vanity Fair factor – which is based on an interpretation of Bulova, see Vanity Fair, 234 F.2d at 642 – uses much broader language: whether "the defendant's conduct ha[s] a substantial effect on United States commerce." (Id.)

In any event, many cases involving extraterritorial application of the Lanham Act have relied on commercial effects that do not reflect direct impairment to a trademark in the United States.

For example, in Bulova, the Supreme Court cited the defendant's domestic purchase of components used in the Bulova watch knockoffs in finding that the Lanham Act extended to Defendant's manufacture of the knockoffs in Mexico City. Bulova, 344 U.S. at 286-87. Steele's purchase in the United States of the components for his phony "Bulova" watch knockoffs did not itself impair Bulova's trademark, but these purchases were nonetheless cited as a basis for the extraterritorial application of the Lanham Act.

Moreover, several courts have applied the Lanham Act extraterritorially where a domestic company has lost foreign sales because of infringing conduct abroad. For example, in

14

Software AG, Inc. v. Consist Software Sols., Inc., No. 08 CIV. 389CMFM, 2008 WL 563449, at *14 (S.D.N.Y. Feb. 21, 2008), aff'd, 323 F. App'x 11 (2d Cir. 2009), a domestic software company sued another domestic software company alleging false advertising in Brazil related to a trademark dispute in that country. In determining that the "substantial effect on United States commerce" prong of Vanity Fair was satisfied, the district court relied on potentially lost sales of Colorado-based technical support to customers in Brazil. There was no claim in Software AG that plaintiff's trademark was being impaired in the United States. See id. at *14 ("no literally false statement was directed into the United States or to a U.S. customer").

Similarly, in Warnaco Inc. v. VF Corp., 844 F. Supp. 940 (S.D.N.Y. 1994), plaintiff brought a Lanham Act claim based on infringing conduct in Spain and Portugal. There was no claim that defendant had impaired plaintiff's trademark in the United States. The court nonetheless found that "diversion of sales and adverse impact on foreign licensees can constitute substantial impact on United States commerce." Warnaco, 844 F. Supp. at 944, 952 (citation omitted).

And in Totalplan Corp. of America v. Colborne, 14 F.3d 824 (2d Cir. 1994) – while the Second Circuit ultimately concluded that a basis for the extraterritorial application of the Lanham Act did not exist – in conducting its analysis of the "substantial effect on United States commerce" factor, the court considered whether the domestic plaintiff had shown that it had lost foreign sales. See Totalplan, 14 F.3d at 830 ("Totalplan has not shown that any foreign sales of Love cameras have been diverted from it by Lure's shipment to Japan.").

Finally, in Piccoli A/S v. Calvin Klein Jeanswear Co., 19 F. Supp. 2d 157, 172 (S.D.N.Y. 1998), the court found Lanham Act jurisdiction over infringement in Scandinavia committed by a domestic defendant, even though there was no evidence of trademark

15

impairment in the United States. In Piccoli, plaintiff – the exclusive distributor of Calvin Klein jeans in Scandinavia – sued, among others, the exclusive distributor of the jeans in the United States, which was exporting excess inventory to Scandinavia. See Piccoli, 19 F. Supp. 2d at 160-62. The court found the Lanham Act applicable because the U.S. distributor had "engaged in an organized scheme pursuant to which [it] sent promotional materials to prospective purchasers which invited them to come to its U.S. showrooms to view, negotiate for and purchase Calvin Klein jeans for unrestricted international distribution." The court found that this conduct constituted "a use of the physical stream of American commerce that was essential to the alleged infringement [overseas]." Id. at 171. Although the alleged foreign trademark infringement could have no domestic trademark effect – given that plaintiff held only a foreign trademark license – the domestic defendant's commercial activity in the United States was found sufficient to justify extraterritorial application of the Lanham Act.

The Court concludes that – under the circumstances of this case – Plaintiff is not limited to trademark-impairing conduct in the United States in showing a "substantial effect on United States commerce."[5] This Court further concludes that – in alleging that three specific

---

[5] Sterling Drug. Inc. v. Bayer AG, 14 F.3d 733 (2d Cir. 1994) is not to the contrary. In that case, the Second Circuit vacated a district court injunction that had "extensive extraterritorial effects" – because the court had not considered the Vanity Fair factors – and ordered the district court to craft an injunction that would "prohibit only those foreign uses of the mark by Bayer AG that are likely to have significant trademark-impairing effects on United States commerce." Sterling Drug, 14 F.3d at 746-47. In so instructing, the Circuit noted that because the defendant was not a United States citizen and held foreign trademark rights, the Vanity Fair factors could be read to suggest the there was no basis to apply the Lanham Act extraterritorially. Id. at 746. The Circuit declined to apply Vanity Fair "mechanically," however, instead balancing "the Lanham Act's goals of protecting American consumers against confusion, and protecting holders of American trademarks against misappropriation of their marks," with the need to avoid its use "as a sword to eviscerate completely a foreign corporation's foreign trademark." Id. In sum, the "trademark-impairing" language found in Sterling Drug reflects the unique circumstances of that case, which are not present here. Avon does not argue otherwise.

U.S. companies "lost lucrative contracts" with Plaintiff as a result of the damage Avon inflicted through its infringement-related activities in Panama (see Cmplt. (Dkt. No. 1) ¶ 38) – Plaintiff has adequately pled a "substantial effect on United States commerce" flowing from Defendant's alleged infringement in Panama.

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is denied. The Clerk of the Court is directed to terminate the motion (Dkt. No. 17).

Dated: New York, New York
       March 19, 2017

SO ORDERED.

*Paul Gardephe*

Paul G. Gardephe
United States District Judge